**No. 20-20030**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

ASHER ABID KHAN,
Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division,
Cr. No. H-15-263 (Hon. Lynn N. Hughes)

**BRIEF OF PLAINTIFF-APPELLANT**

RYAN K. PATRICK
United States Attorney
Southern District of Texas

JOHN C. DEMERS
Assistant Attorney General
National Security Division

DANIELLE S. TARIN
JOSEPH F. PALMER
Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
Phone: (202) 532-4493

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF INTERESTED PERSONS

*United States v. Asher Khan*, No. 20-20030

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case:

1. The Honorable Lynn N. Hughes, United States District Judge.

2. Asher Abid Khan, Defendant-Appellee.

3. United States of America, Plaintiff-Appellant.

4. Counsel for Plaintiff-Appellant:

    United States Attorney Ryan Patrick; Former United States Attorney Kenneth Magidson; Former Acting United States Attorney Abe Martinez; Assistant United States Attorney Alamdar Hamdani (district court); Assistant United States Attorney Carolyn Ferko (district court); Assistant United States Attorney Renata Gowie (on appeal); Assistant United States Attorney Carmen Castillo Mitchell (district court and on appeal); Assistant United States Attorney Anna Kalluri (district court and on appeal); Attorney Danielle Tarin (on appeal); Attorney Joseph Palmer (on appeal).

5. Counsel for Defendant-Appellee:

    David Adler, David Adler PC (district court and on appeal); Thomas Berg, Mallett Saper Berg, L.L.P. (district court and on appeal).

These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

/s/ *Danielle S. Tarin*
DANIELLE S. TARIN

## STATEMENT REGARDING ORAL ARGUMENT

The government requests oral argument, and government counsel will make arrangements to appear (remotely, if necessary) if this Court decides to hear oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE..............................................................................1

I.   Course of Proceedings and Disposition in the Court Below......................1

II.   Background.................................................................................................3

    A. The Islamic State of Iraq and Syria ........................................................3

    B. The Offense Conduct: Khan Provides Material Support to ISIS ..........4

        1.   Summary .......................................................................................4

        2.   Khan Recruits Sixto Garcia To Join ISIS as a Fighter ...................5

        3.   Khan Continues To Distribute ISIS Propaganda ............................6

        4.   Khan and Garcia Travel Abroad To Join ISIS as Fighters .............8

        5.   Khan Returns to Texas While Continuing To Encourage and
            Support Garcia Joining ISIS ...........................................................9

        6.   Khan Continues Helping Garcia and Distributing ISIS
            Propaganda .................................................................................10

        7.   Garcia Dies, Apparently While Fighting for ISIS in Iraq..............11

C. Charges and Guilty Plea ........................................................11

D. The Initial Sentencing ..........................................................13

    1. The District Court's Guidelines Calculation...................13

    2. The District Court's Downward Variance .....................14

E. First Sentencing Appeal .......................................................15

F. The Resentencing on Remand ..............................................16

ARGUMENT SUMMARY ..............................................................18

ARGUMENT ...................................................................................20

I.   Legal Standards and Standard of Review........................20

II.  The Sentence Was Substantively Unreasonable.............22

A. The District Court Impermissibly Second-Guessed Whether Khan Recruited Garcia as a Fighter for ISIS ...................................26

B. The District Court Relied Instead on Factors that Could Not Bear the Weight Assigned to Them ........................................................28

C. Sentencing Disparity ...............................................32

CONCLUSION ..............................................................................36

CERTIFICATE OF SERVICE ......................................................37

CERTIFICATE OF COMPLIANCE.............................................38

APPENDIX.....................................................................................39

# TABLE OF AUTHORITIES

**Cases**                                                          Page

*ACLU v. Dep't of Def.*, 901 F.3d 125 (2d Cir. 2018) ...............................................3

*Doe v. Mattis*, 889 F.3d 745 (D.C. Cir. 2018) .........................................................3

*Endeley v. Dep't of Def.*, 268 F. Supp. 3d 166 (D.D.C. 2017) .................................3

*Gall v. United States*, 552 U.S. 38 (2007) ............................................18, 20, 21, 22

*Kimbrough v. United States*, 552 U.S. 85 (2007) ...................................................24

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) ..........................................35

*United States v. Bell*, 81 F. Supp. 3d 1301 (M.D. Fla. 2015) ...........................23, 31

*United States v. Christianson*, 586 F.3d 532 (7th Cir. 2009) .................................23

*United States v. Fidse*, 862 F.3d 516 (5th Cir. 2017) .............................................20

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ...........................................7

*United States v. Herrera-Garduno*, 519 F.3d 526 (5th Cir. 2008) .........................21

*United States v. Hoffman*, 901 F.3d 523 (5th Cir. 2018) ......................20, 21, 22, 35

*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011) ..............................24, 35

*United States v. Khan*, 938 F.3d 713 (5th Cir. 2019) ......................................passim

*United States v. Meskini*, 319 F.3d 88 (2d Cir. 2003) ........................................23, 32

*United States v. Mumuni*, 946 F.3d 97 (2d Cir. 2019)...............................24, 28, 34

*United States v. Nguyen*, 854 F.3d 276 (5th Cir. 2017)......................................20, 21

*United States v. Peltier*, 505 F.3d 389 (5th Cir. 2007) ...........................................20

*United States v. Piper*, 912 F.3d 847 (5th Cir. 2019) ...............................................20

*United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) .......................23, 24, 32, 35

*United States v. Rhine*, 637 F.3d 525 (5th Cir. 2011) ...............................................20

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006) ...............................................21

*United States v. Van Haften*, 881 F.3d 543 (7th Cir. 2018) ....................................33

**Statutes**

18 U.S.C. § 956 ........................................................................................................2, 12

18 U.S.C. § 2332b ...........................................................................................................13

18 U.S.C. § 2339A ..................................................................................................2, 12, 26

18 U.S.C. § 2339B ..................................................................................................passim

18 U.S.C. § 3553(a) .................................................................................................passim

18 U.S.C. § 3742(b) .........................................................................................................1

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214 ......................................................................23

Fed. R. App. P. 4(b) ........................................................................................................1

U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2016)

    U.S.S.G. § 2M5.3 ...............................................................................................14, 17

    U.S.S.G. § 3A1.4 ..............................................................................................13, 23

Uniting and Strengthening America by Fulfilling Rights and Ensuring
Effective Discipline over Monitoring Act of 2015 (USA FREEDOM Act),
Pub. L. No. 114-23, 129 Stat. 268 ..........................................................................23

Uniting and Strengthening America by Providing Appropriate Tools
Required To Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT Act),
Pub. L. No. 107-56, 115 Stat. 272 ...........................................................................23

Violent Crime Control and Law Enforcement Act of 1994,
Pub. L. No. 103-322, 108 Stat. 1796 .....................................................................23

# STATEMENT OF JURISDICTION

The government appeals from the district court's resentencing of the defendant-appellee Asher Abid Khan on December 13, 2019. ROA.761.[1] The district court entered its amended judgment on December 26, 2019. ROA.468-72. The district court had jurisdiction under 18 U.S.C. § 3231. The government timely filed a notice of appeal on January 23, 2020. ROA.475, 478; *see* Fed. R. App. P. 4(b). This Court has jurisdiction over the appeal under 18 U.S.C. § 3742(b). The Solicitor General has authorized this appeal. *See* Appendix.

# STATEMENT OF THE ISSUES

Whether the 18-month sentence of imprisonment that the district court imposed at resentencing for providing material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B—a 90 percent downward variance from the recommended Guidelines sentence—was substantively unreasonable.

# STATEMENT OF THE CASE

## I.     Course of Proceedings and Disposition in the Court Below

On May 27, 2015, a grand jury charged Asher Khan in the United States District Court for the Southern District of Texas with conspiracy and attempting to provide material support to a designated foreign terrorist organization, in violation

---

[1] The record on appeal ("ROA") is cited in accordance with 5th Circuit Rule 28.2.2.

of 18 U.S.C. § 2339B.  ROA.45-46.  The district court ordered Khan released

pending trial.  ROA.62-63.  The government appealed that order, and this Court

upheld the order over Judge Clement's dissent.  ROA.91.

On March 9, 2016, the grand jury charged Khan and co-conspirator

Mohamed Zuhbi in a six-count superseding indictment.  ROA.124.  The indictment

alleged five material support counts, in violation of 18 U.S.C. §§ 2339A and

2339B, as well as one count of conspiracy to commit murder abroad, in violation

of 18 U.S.C. § 956.

On December 4, 2017, Khan pleaded guilty to one count of providing

material support to a foreign terrorist organization, in violation of 18 U.S.C.

§ 2339B.  ROA.658.  The district court sentenced Khan to 18 months of

imprisonment and five years of supervised release.  ROA.320-23.

The government timely appealed from the sentence to this Court.  ROA.328,

331.  On September 16, 2019, this Court vacated Khan's sentence and remanded

the case for resentencing.  *United States v. Khan*, 938 F.3d 713, 719 (5th Cir.

2019).

On December 13, 2019, the district court reimposed a sentence of 18 months

of imprisonment.  ROA.761.  The district court entered its amended judgment on

December 26, 2019.  ROA.468-72.  The government timely appealed to this Court.

ROA.475, 478.

II.    Background

A. The Islamic State of Iraq and Syria

The Islamic State of Iraq and Syria ("ISIS"), also known as the Islamic State

of Iraq and the Levant or "ISIL," ROA.503, is an ultra-violent, jihadist terrorist

organization.  ROA.775, 831-32; *see* ROA.665-66.  The group was formally

designated a foreign terrorist organization by the U.S. Department of State in

October 2004, when it was known as al-Qaeda in Iraq, and, again, under the alias

ISIS in May 2014.  ROA.775, 831-32; *see Khan*, 938 F.3d at 714.

ISIS espouses a radical, extremist, and violent jihadist ideology that is

committed to establishing an Islamic State, or "caliphate," in Iraq and Syria and to

fighting a holy war against those who oppose these goals in the West and the

Middle East.  ROA.832.  ISIS has waged war against numerous countries,

including the United States, Syria, and Iraq.  *See* ROA.832; *see also Doe v. Mattis*,

889 F.3d 745, 749 (D.C. Cir. 2018) (ISIS "has perpetrated and aided terrorism" in

Iraq and Syria, where it controls territory, "and around the world, killing several

thousand civilians, including American aid workers and journalists."); *ACLU v.

Dep't of Def.*, 901 F.3d 125, 131 n.7 (2d Cir. 2018) (ISIS has "called on members

to commit attacks in retaliation for the actions of the United States in Syria and

Iraq.") (internal quotation marks and citation omitted); *Endeley v. Dep't of Def.*,

268 F. Supp. 3d 166, 174 (D.D.C. 2017) ("[T]he United States has been involved

3

in an extended armed conflict with [ISIS] in the region.").  As compared to other

terrorist organizations, ISIS is particularly pernicious, targeting civilians through

suicide bombings, beheadings, improvised explosive devices, and mass killings.

ROA.832.

ISIS actively works to increase its following world-wide by recruiting new

members and sympathizers to its ideology.  ROA.832.  ISIS has used the internet

and social media to recruit fighters, to spread its ideology, to attract financial and

other material support, and to incite followers to commit terrorist attacks abroad.

*See* ROA.832.

B. The Offense Conduct: Khan Provides Material Support to ISIS

1. Summary

In 2013, Khan—a U.S. citizen, then 19 years old and living in Houston,

Texas—began advocating radical Islamic views and praising ISIS's activities

online.  *Khan*, 938 F.3d at 714.  Khan did so knowing that ISIS had been

designated as a foreign terrorist organization and that ISIS engages in terrorism.

*Id.*  After moving to Australia due to disaffection with the United States, Khan

recruited another American (Sixto Ramiro Garcia) to join ISIS together with Khan

as a fighter.  *Id.*  Khan made arrangements with an ISIS travel facilitator in Turkey

who agreed to help the pair travel to Syria to join ISIS.  *Id.* at 715.  Khan and

Garcia flew to Turkey, but Khan's family in the United States tricked Khan into

4

returning home instead of continuing on to Syria. *Id.* Before leaving Turkey, Khan gave Garcia money and contact information for the facilitator who had agreed to smuggle them into Syria. *Id.* Once back in the United States, Khan remained in contact with Garcia and helped Garcia make contact with the ISIS facilitator. *Id.* After Garcia arrived in Syria, Khan urged Garcia to fight for ISIS rather than other armed groups in Syria. *Id.* Khan also solicited others online to contribute money to Garcia and the ISIS facilitator after returning to the United States. *Id.* Garcia joined ISIS and never returned home. One of Garcia's comrades announced on social media a few months later that Garcia was killed fighting in Iraq for ISIS. *Id.*

2. <u>Khan Recruits Sixto Garcia To Join ISIS as a Fighter</u>

In December 2013, while living in Australia, Khan began recruiting friends to join ISIS together with him as fighters, including, among others, Garcia. *Khan*, 938 F.3d at 714; ROA.775, 833. Garcia was a 20-year-old convert to Islam, and he and Khan had attended the same mosque in Texas. *Khan*, 938 F.3d at 714; ROA.505. Khan contacted Garcia and told Garcia that he was planning "to go to Iraq soon to join" ISIS. *Khan*, 938 F.3d at 714; ROA.28, 832; *see* ROA.506, 664. Khan sent Garcia propaganda materials "to get [him] familiar with fighting in Islam." ROA.28, 705, 832-33; *see* ROA.43. Garcia agreed to travel to the Middle East with Khan to join ISIS. *Khan*, 938 F.3d at 714; ROA.28, 833.

Khan then reached out to an ISIS supporter in Turkey, Mohamed Zuhbi, who helped facilitate travel for potential ISIS recruits. *Khan*, 938 F.3d at 715. Khan said to Zuhbi, "I wan[n]a join ISIS can you help?" ROA.28, 506, 833; *see* ROA.775. Zuhbi agreed to help Khan travel to Syria if Khan reached Turkey, and Zuhbi worked with Khan to plan the logistics. *Khan*, 938 F.3d at 715; ROA.775, 832. Khan and Garcia in turn planned and coordinated their travel to Turkey so they could join ISIS in Syria as fighters. *See Khan*, 938 F.3d at 715; ROA.28, 775, 833. They planned how to travel to Turkey and Syria without raising the suspicion of authorities, including concocting a cover story for their travel. ROA.775.

### 3. Khan Continues To Distribute ISIS Propaganda

Meanwhile Khan continued declaring on social media that he wanted to fight for ISIS and hoped to become a martyr. ROA.507, 526, 832-34. On his Facebook page, Khan posted a picture of an armed fighter with the words, "[t]he best of the [martyrs] are those who fight in the front lines and do not turn away their faces until they are killed." ROA.519. Khan also weighed whether he and Garcia should first travel to Iraq for training and then "go on the front lines in [D]amascas" to fight with ISIS. ROA.28, 832-33. Khan said, "All I know is that I want to fight [for the sake of Allah]," and "so far all I see is ISIS fighting for

Khilafah."[2]  ROA.29, 833-34.  Khan repeatedly expressed his desire to help establish an Islamic State and to revive the caliphate.  ROA.833; *see* ROA.38, 665-66.  Khan also stated that he wanted "to die as a [martyr]" and that he was "looking forward to dying in Allah's cause and meeting Allah."  ROA.834; *see* ROA.37-40.

Khan also professed his love for, and distributed propaganda produced by, Anwar Al-Awlaki, an American-born imam and cleric who became an al-Qaeda militant in Yemen.  Al-Awlaki was well-known as an al-Qaeda leader who espoused violent and radical jihadist views and published his extreme views— particularly that violent jihad against Americans was a binding obligation on Muslims—through speeches and writings on the internet.  *See* ROA.513-14; *see also United States v. Hassan*, 742 F.3d 104, 117 n.9 (4th Cir. 2014) ("[A]l-Awlaki's teachings have proven extraordinarily popular among extremists living in western countries, and have regularly surfaced in cases of homegrown terrorists.") (internal quotation marks and citation omitted).  Al-Awlaki had directly communicated with Nidal Hasan, known as "the Fort Hood shooter," and Umar Farouk Abdulmutallab, known as "the underwear bomber," and he inspired numerous other terrorists, including the Boston Marathon bombers.  ROA.513-14.  He was killed in an American drone strike in Yemen in 2011.  *See* ROA.513-14.  On February 14, 2014, Khan sent another friend a video about Al-Awlaki.  *See*

---

[2] "Khilafah" is a name for the Muslim state or the religious leader of a Muslim state.

ROA.513.  Khan told her, "[Al-Awlaki] was a man, killed for his knowledge. Literally[.]  He has THE BEST LECTURES[.]  An American born, perfect English like us[.]  I wish I could inject everything I know about him into you.  And creat[e] the same love I have for him in you.  And every other Muslim."  ROA.39; *accord* ROA.514.

### 4.  Khan and Garcia Travel Abroad To Join ISIS as Fighters

While Khan was distributing ISIS and other violent jihadist propaganda, Khan and Zuhbi finalized the travel arrangements.  ROA.835-36.  Zuhbi instructed Khan to fly to Istanbul and, after taking a bus to Antakya (in southeastern Turkey near the Syrian border), to call Zuhbi with a disposable cell phone.  ROA.30-31, 508-09, 775, 835.  Khan relayed the plan to Garcia, who was in Texas, and the two friends continued updating each other on their plans.  ROA.30, 508, 835.  They also researched tourist destinations in Turkey so they could plausibly claim to be tourists.  ROA.31, 510, 775, 835.  When Garcia indicated to Khan that he was nervous, Khan reassured Garcia, stating, "Lol, bro chill and have fun.[]  This is an experience so enjoy it and learn from it."  ROA.31, 510; *see* ROA.775.  Khan reminded Garcia that his nervousness could attract the attention of the authorities: "You're a tourist and tourist[s] are never nervous.  They are curious."  ROA.31, 510; *see* ROA.775.

8

On February 23 and 24, 2014, Khan flew from Australia through Malaysia to Istanbul, while Garcia simultaneously flew to Istanbul from Houston. *Khan*, 938 F.3d at 715; ROA.31-32, 510-11, 664, 775, 836. Upon his departure, Khan sent messages to his family in Texas informing them of his plans. ROA.836. When Khan landed in Malaysia, he received frantic messages from his family begging him to return to Texas. *Khan*, 938 F.3d at 715; ROA.32, 511, 836. In their desperation to get Khan to come home, Khan's family tricked him with a false story that his mother was in intensive care following a heart attack and that he needed to come home to see her before she died. *Khan*, 938 F.3d at 715; ROA.512-13, 776.

5. <u>Khan Returns to Texas While Continuing To Encourage and Support Garcia Joining ISIS</u>

Khan told Garcia that he was going home and would not travel to Syria with Garcia at that time. *Khan*, 938 F.3d at 715; ROA.32, 776, 836. Garcia "pleaded with [Khan] to not leave him stranded in Turkey," protesting that he did not have enough money or connections to get to Syria without Khan. ROA.512; *see* ROA.32, 836. Khan told Garcia not to worry and that Khan would still meet him in Turkey. ROA.32, 836. Khan met Garcia in Istanbul and gave Garcia money and Zuhbi's contact information so that Garcia could enter Syria and join ISIS as a fighter with Zuhbi's help. ROA.776; *see Khan*, 938 F.3d at 715; ROA.32, 512,

9

664, 835-36.  Khan then left Garcia in Turkey and went home to Texas.  *Khan*, 938 F.3d at 715.

On February 26, Garcia contacted Khan (then in Texas) online, saying that he had arrived in Antakya, near the Syrian border, but was unable to get in contact with Zuhbi.  ROA.32, 836-37; *see Khan*, 938 F.3d at 715.  Khan in turn contacted Zuhbi, asking that Zuhbi contact Garcia directly.  ROA.32; *Khan*, 938 F.3d at 715.  Khan explained that while he had returned to Texas, Garcia wanted to continue on to Syria immediately.  ROA.32.  Zuhbi and Garcia made contact in Antakya, and Garcia later messaged Khan to say that Garcia had "been delivered" to Syria but was not with ISIS yet.  *Khan*, 938 F.3d at 715; ROA.35, 776, 837; *see* ROA.41.  Khan offered to help Garcia, saying, "[I]f you ever need money, ask me!"  ROA.35, 837.

### 6.  Khan Continues Helping Garcia and Distributing ISIS Propaganda

In the following months "[w]hile in Houston, Khan continued to distribute ISIS propaganda."  *Khan*, 938 F.3d at 715.  And, "[v]ia Facebook, Khan asked others to raise funds for Zuhbi."  *Id.*; ROA.580, 690

Khan "also continued to communicate with Garcia."  *Khan*, 938 F.3d at 715; ROA.520-22, 689, 708, 837.  Khan encouraged Garcia to join ISIS and offered assistance.  *See Khan*, 938 F.3d at 715.  After Garcia reported to Khan that he had joined and was fighting with a non-ISIS group, "Khan implored Garcia to join

ISIS" instead and "offered to support Garcia by sending him food and money."
*Id.*; ROA.35-36, 689-90, 776, 837.  Khan also told Garcia that the members of the
mosque missed him but that "[t]hey're all afraid to message you though cuz they
think they might get arrested lol."  ROA.837.  In August 2014, Garcia reported to
Khan that he had finally succeeded in joining ISIS.  *Khan*, 938 F.3d at 715;
ROA.36, 776, 737.  Garcia explained to another friend that he was able to join ISIS
because of Zuhbi's help.  *See* ROA.41, 784.

### 7. Garcia Dies, Apparently While Fighting for ISIS in Iraq

"In September 2014, all communications with Garcia ceased."  *Khan*, 938
F.3d at 715 (internal quotation marks omitted); *see* ROA.776, 838.  In October,
Garcia's family contacted law enforcement and asked for help finding their son.
*Khan*, 938 F.3d at 715; ROA.838.  The government began gathering information
about Garcia's online activities and discovered Khan's involvement.  ROA.838.
On Christmas Day in 2014, Garcia's mother received a message through Garcia's
Facebook account from one of Garcia's friends in Syria.  ROA.838.  The friend
explained that Garcia had gone to fight in Iraq "where we believe he 'attained
martyrdom.'"  *Khan*, 938 F.3d at 715; ROA.838; *see* ROA.776.

### C. Charges and Guilty Plea

Khan was arrested in May 2015 and was charged with conspiracy and
attempting to provide material support to a designated foreign terrorist

organization, in violation of 18 U.S.C. § 2339B.  *Khan*, 938 F.3d at 715.  Khan

was released on bond.  *Id.*  In March 2016, the grand jury charged Khan and Zuhbi

in a six-count superseding indictment.  The indictment alleged (1) conspiracy to

provide material support to a designated foreign terrorist organization, in violation

of 18 U.S.C. § 2339B(a)(1); (2) conspiracy to commit murder in a foreign country,

in violation of 18 U.S.C. § 956(a)(1); (3) conspiracy to provide material support to

terrorists, in violation of 18 U.S.C. § 2339A(a); (4) attempting to provide material

support to a designated foreign terrorist organization, in violation of 18 U.S.C.

§ 2339B(a)(1); (5) attempting to provide material support to terrorists, in violation

of 18 U.S.C. § 2339A(a); and (6) providing material support to a designated

foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1).  ROA.123-

30.

On December 4, 2017, Khan pleaded guilty to Count 6.  *Khan*, 938 F.3d at

715.  "Count 6 specifically charged that Khan provided material support and

resources, including personnel, to a designated foreign terrorist organization, and

identified Garcia as having been provided by Khan to ISIS."  *Id.*  In the plea

agreement, Khan admitted that he had recruited Garcia to join ISIS with him "as a

fighter"; that, at least from December 2013 and through December 25, 2014, he

knew that ISIS "engages in, and has engaged in[,] terrorist activity and terrorism,

and that [ISIS] is a designated foreign terrorist organization"; that he had traveled

12

to Turkey for the purpose of joining and fighting with ISIS in Syria; and that he had given Garcia money and other assistance knowing that Garcia intended to join and to fight with ISIS. ROA.775-76; *see* ROA.664-67.

D. The Initial Sentencing

1. The District Court's Guidelines Calculation

The Presentence Investigation Report ("PSR") calculated an advisory Sentencing Guidelines sentence of 180 months of imprisonment. *Khan*, 938 F.3d at 716. (The range would have been 360 months to life imprisonment, but the statutory maximum was 15 years of imprisonment.) Critical to that Guidelines range was application of the terrorism enhancement. That enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism," U.S.S.G. § 3A1.4(a), defined as one that both (1) is enumerated in the list of offenses in 18 U.S.C. § 2332b(g)(5)(B), and (2) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A); *see* U.S.S.G. § 3A1.4 cmt. n.1.

But the district court declined to apply the terrorism enhancement, primarily because it viewed that enhancement as duplicative in the context of a prosecution for a terrorism offense. *Khan*, 938 F.3d at 716. The district court also believed that the enhancement was inapplicable to conduct intended to influence a *foreign*

13

government.  *Id.*  (Khan argued that he had intended to fight against only the Syrian president's forces, not against U.S. forces.  *See* ROA.703-04.)  And the district court did not view all of Khan's conduct as terroristic in nature.  *Khan*, 938 F.3d at 716.

Omitting the terrorism enhancement, the district court calculated an advisory sentencing range of 46 to 57 months of imprisonment.  *Id.* at 715.  The Guideline for violations of Section 2339B, U.S.S.G. § 2M5.3, sets the base offense level at 26.  *Id.*  The district court applied a three-level reduction for Khan's acceptance of responsibility, resulting in an overall offense level of 23.  *Id.*  Khan had no prior criminal history.  *Id.*  With no prior criminal history, the resulting Guidelines range was 46 to 57 months of imprisonment.  *Id.*

## 2.  The District Court's Downward Variance

Khan requested a downward variance to a 12-month sentence of imprisonment, "acknowledg[ing] it was an unusual and substantial request."  *Khan*, 938 F.3d at 716.  In addressing the sentencing factors under 18 U.S.C. § 3553(a), defense counsel emphasized Khan's youth when he committed the offense and his subsequent efforts to rehabilitate himself.  *Id.*  The defense claimed that Khan had been attending college, working productively, and had spoken on behalf of groups that help Muslim youths vulnerable to jihadist propaganda.  *Id.*  "During sentencing, Khan apologized for his actions contributing to Garcia's death, urged

14

that he and Garcia were 'victim[s] of the same propaganda,' and insisted that he never condoned attacking U.S. civilians." *Id.* Khan said he had only wanted to fight against Syrian President Bashar al-Assad and his forces. ROA.703-04.

The district court applied a downward variance to impose a sentence of 18 months of imprisonment and a five year term of supervised release. *Khan*, 938 F.3d at 717. The district court accepted the defense's characterization of Khan as a naïve, idealistic youth who had been deceived by propaganda into believing that joining ISIS would help solve the problems in Syria. The court emphasized how common it is for naïve credulity to lead to extremism. ROA.709-11. The court indicated that Khan's good behavior since his arrest showed that he had learned that lesson. *Khan*, 938 F.3d at 717. The court also disregarded a letter from Garcia's mother, in which she explained that she had lost her son as a result of Khan's actions, because the letter bore "only on her grief" and was "not cogent." ROA.701-02.

E. <u>First Sentencing Appeal</u>

On July 30, 2018, the government appealed the sentence as procedurally and substantively unreasonable. ROA.328. On September 16, 2019, this Court unanimously reversed the district court on procedural-reasonableness grounds. This Court did not address the substantive reasonableness of the sentence. This Court agreed with the government that the district court committed procedural

error by declining to apply the terrorism enhancement, rejecting each of the district court's reasons for doing so.[3] *Khan*, 938 F.3d at 719. Accordingly, this Court vacated the sentence, remanded the case for resentencing, and ordered issuance of the mandate "forthwith." *Id.*

F. The Resentencing on Remand

On September 18, 2019, the district court scheduled a hearing "on the law affecting resentencing" for November 20, 2019. ROA.372-75. Khan was scheduled to be released from a halfway house on November 26, 2019, so the government asked the court to set the resentencing also for November 20, 2019. ROA.374. The district court set resentencing instead for November 29, 2019, and then rescheduled it for December 13, 2019. ROA.388-89. Khan was released on November 26, 2019. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 11, 2020). The district court held the resentencing hearing on December 13, 2019. *See* ROA.735.

At the resentencing on remand, the district court reimposed the same 18-month sentence of imprisonment. This time, the district court applied the terrorism

---

[3] This Court found that applying the enhancement would not constitute impermissible double counting and that the enhancement can apply to conduct directed at a foreign government. *Khan*, 938 F.3d at 718. The Court further held that although some terrorism offenses may be "less reprehensible" than others, that circumstance "is immaterial when determining whether the enhancement applies." *Id.* Finally, this Court concluded that the procedural error was not harmless because the record did not establish whether the district court would have imposed the same sentence regardless of the error. *Id.* at 719.

enhancement, resulting in a 180-month advisory Guidelines sentence.[4]  But the

court reached the same 18-month term of imprisonment as it had imposed initially,

by varying downward 90 percent from the Guidelines sentence.  ROA.761.

The district court made a variety of observations throughout the resentencing

hearing, but, in justifying the variance, the court primarily emphasized that Khan's

conduct was "miniscule" compared to other terrorists.  ROA.753-56.  The court

described Khan's activities as nothing more than discussing jihadism, buying a

plane ticket, making some phone calls, and offering help to a friend.  The court

noted further that, at the time of his conduct, Khan was "impressionable" and

"teenage stupid."  ROA.753-57.  The court also found that Khan had no criminal

history and that Khan had shown good behavior since his arrest, including

participating in programs to dissuade students from engaging in terrorism and

holding down a job in a "distinguished profession" as a "pizza delivery guy."

ROA.753-57.  The court also found that Khan did not recruit Garcia, but rather that

Khan and Garcia each made their own independent decision to join ISIS.

ROA.754, 757 (saying that "Garcia was not recruited").  According to the district

---

[4] The district court calculated a base offense level of 26 (applying U.S.S.G. § 2M5.3, the Guideline for 18 U.S.C. § 2339B violations).  Then, with the parties' agreement, the district court applied the terrorism enhancement, adding 12 levels to the offense level and setting the criminal history score at VI.  ROA.752.  Based on a total offense level of 38 and a criminal history category of VI, the sentencing range was 360 months to life of imprisonment.  Because the statutory maximum term was 180 months of imprisonment, the applicable Guidelines range was capped at that statutory maximum term.  *See* ROA.741.

court, Khan's provision of material support to ISIS consisted only of giving money to Garcia, "traveling with [Garcia][,] and then giving [Garcia] a phone number when [Khan] bailed on him." ROA.754, 759. In response to a request for clarification from defense counsel, the district court also indicated that it was varying downward based on a policy disagreement with the Guidelines. ROA.765.

## ARGUMENT SUMMARY

The Guidelines' view of the appropriate sentence reflected the seriousness of Khan's offense. But the district court paid essentially no attention to the recommended Guidelines sentence, imposing an 18-month sentence of imprisonment, or 10 percent of the advisory Guidelines sentence—exactly the same sentence that it had imposed in 2018 when it failed to correctly calculate the Guidelines range by refusing to apply the terrorism enhancement. In *Gall v. United States*, the Supreme Court directed appellate courts to consider the "extent of the deviation [from the Guidelines range] and ensure that the justification is sufficiently compelling to support the degree of the variance." 552 U.S. 38, 50 (2007). The reasons the district court provided cannot justify the degree of variance here.

Simply put, the 18-month sentence did not reflect the gravity of Khan's conduct. Khan sought to join with and fight for some of the most violent and dangerous terrorists in the world. Aligning himself with those terrorists and very

18

nearly succeeding in his own attempt to fight for them, Khan inspired, recruited, and enabled a co-conspirator who did succeed in traveling to Syria and Iraq to join ISIS as a fighter and who ultimately was killed while fighting for ISIS. In light of Khan's serious criminal conduct, the sentence the district court imposed was shockingly low and substantively unreasonable under the sentencing factors prescribed by 18 U.S.C. § 3553(a).

The district court committed three errors in arriving at a substantively unreasonable sentence. First, the district court relied on a sterilized account of Khan's conduct that is unsupported by the record and that contradicts this Court's prior opinion and the factual stipulation included in Khan's plea agreement. Second, the district court assigned controlling weight to factors that could not bear such weight under the totality of the circumstances, including Khan's allegedly "miniscule" conduct, his good behavior since returning from Turkey, and his age. Third, the sentence resulted in unwarranted disparity with the sentences of similarly situated defendants who have received far more severe sentences. The government is unaware of any similarly situated defendant who has traveled or attempted to travel overseas to join ISIS or another terrorist organization and who received such a low sentence for violating 18 U.S.C. § 2339B.

Under these circumstances, the district court rendered a sentence that exceeded the bounds of reasonableness. Accordingly, this Court should again vacate the sentence and remand the case for resentencing.

## ARGUMENT

I.   <u>Legal Standards and Standard of Review</u>

"This Court reviews sentences to determine whether they are 'reasonable.'" *Khan*, 938 F.3d at 717 (quoting *Gall*, 552 U.S. at 46). "Reasonableness has two parts: procedural and substantive reasonableness." *United States v. Rhine*, 637 F.3d 525, 527 (5th Cir. 2011). The question presented here is whether the sentence was substantively unreasonable. *See United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017).

"Appellate review of the substantive reasonableness of a sentence is highly deferential." *United States v. Hoffman*, 901 F.3d 523, 554 (5th Cir. 2018) (internal quotation marks omitted). In general, this Court reviews the substantive reasonableness of the sentence for an abuse of discretion, *United States v. Peltier*, 505 F.3d 389, 391-94 (5th Cir. 2007), and the district court's factual determinations for clear error, *United States v. Piper*, 912 F.3d 847, 858-59 (5th Cir. 2019). A factual finding is clearly erroneous if it is not "plausible in light of the record as a whole." *United States v. Fidse*, 862 F.3d 516, 521 (5th Cir. 2017).

The substantive-reasonableness inquiry "must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006) (citation omitted). A non-Guidelines sentence is substantively unreasonable and does not adequately reflect the Section 3553(a) factors if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* at 708.

When faced with "a challenge to the length of a non-Guidelines sentence," *Nguyen*, 854 F.3d at 283, this Court considers the totality of the circumstances and may take the degree of variance into account and "'may consider the extent of the deviation' from the Guidelines." *Hoffman*, 901 F.3d at 555 (quoting *Gall*, 552 U.S. at 51). A significant variance from the Guidelines range is permissible if it is "commensurate with the individualized, case-specific reasons provided by the district court," because this Court "give[s] due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Herrera-Garduno*, 519 F.3d 526, 530-31 (5th Cir. 2008). But "[t]he farther a sentence varies from the applicable Guidelines sentence, the more compelling the justification based on factors in section 3553(a) must be." *Smith*, 440 F.3d at 707 (internal quotation marks and citation omitted); *accord Gall*, 522

U.S. at 50 ("[A] major departure should be supported by a more significant justification than a minor one.").

II.    The Sentence Was Substantively Unreasonable

The first two factors identified in Section 3553(a) that a court must consider in sentencing are (1) the nature and circumstances of the offense, and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a). The primary reason why the district court's sentence—which reduced Khan's sentence by 90 percent from the recommended 180 months of imprisonment—was substantively unreasonable is because it did not properly account for either of these factors. *See Hoffman*, 901 F.3d at 555 (observing that appellate courts may consider the extent of the deviation from the Guidelines when reviewing substantive reasonableness).

As an initial matter, the 15-year sentence of imprisonment recommended by the Sentencing Guidelines, after a reduction from the initial Guidelines range of 360 months to life imprisonment because of the statutory maximum, reflected the severity of Khan's terrorism conduct. The Guidelines, while advisory, must be taken into account under 18 U.S.C. § 3553(a)(4), and they appropriately reflect Congress's and the Sentencing Commission's judgment that terrorism is different

from other crimes.[5]  "[T]errorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal."  *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003); *see United States v. Ressam*, 679 F.3d 1069, 1090-91 (9th Cir. 2012) (en banc) (explaining the need for longer sentences in terrorism cases).  "Terrorism endangers the lives and property of the public at large, seeks to weaken or destroy societal institutions, and tries to spread as much fear and panic as possible."  *United States v. Bell*, 81 F. Supp. 3d 1301, 1325 (M.D. Fla. 2015); *see United States v. Christianson*, 586 F.3d 532, 539 (7th Cir. 2009) ("[I]f [defendants] use violence and intimidation to further their views, they are terrorists.").  Given these dangers, Congress and the Sentencing Commission concluded that "terrorists and their supporters should be incapacitated for a longer period of time."  *Meskini*, 319 F.3d at 92.  Although it is generally within a district court's discretion to disagree with policy judgments

---

[5] *See*, *e.g.*, U.S.S.G. § 3A1.4; Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 120004, 108 Stat. 1796, 2022 (directing the Sentencing Commission to create an "enhancement" for prison sentences resulting from felonies involving or intended to promote terrorism); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 730, 110 Stat. 1214, 1303 (extending the terrorism enhancement to domestic terrorism offenses); Uniting and Strengthening America by Providing Appropriate Tools Required To Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT Act), Pub. L. No. 107-56, § 810, 115 Stat. 272, 380 (amending 18 U.S.C. § 2339B(a)(1) to increase the statutory maximum sentence from 10 to 15 years of imprisonment and authorizing a life sentence if death results); Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline over Monitoring Act of 2015 (USA FREEDOM Act), Pub. L. No. 114-23, § 704, 129 Stat. 268, 300.

reflected in the Guidelines, *see Kimbrough v. United States*, 552 U.S. 85, 101 (2007), courts of appeals have repeatedly recognized that sentences in terrorism cases may be substantively unreasonable if the sentencing court fails to give appropriate weight to the unique dangers posed by terrorism offenses. *See, e.g., Ressam*, 679 F.3d at 1090-91; *United States v. Jayyousi*, 657 F.3d 1085, 1118 (11th Cir. 2011); *United States v. Mumuni*, 946 F.3d 97, 108-10, 113 (2d Cir. 2019). During sentencing on remand, it was undisputed that the terrorism enhancement applied to Khan. ROA.752. Yet the sentence imposed by the district court effectively negated that enhancement.

As this Court has recognized, some terrorism offenses may be "less reprehensible" than others, *Khan*, 938 F.3d at 718, and the district court may differentiate between different levels of culpable conduct that nonetheless trigger the same enhancement. But even within the context of terrorism defendants, it was error for the court to say that Khan's conduct was "miniscule" compared to other terrorists. *See* ROA.753-56. Khan did not simply advocate extremism online as the district court suggested. ROA.753 ("What [Khan] did is talk about Jihadism or unprincipled murder and decided that was more exciting than whatever he was doing in, I guess, high school at that point."). Rather, Khan recruited Garcia to go to Syria with him to join ISIS—a group that Khan knew was a foreign terrorist organization engaged in ongoing terrorism—and made arrangements enabling the

pair to get as far as Turkey. *Khan*, 938 F.3d at 714-15; ROA.28, 506, 510-11, 664, 775, 833-36. Khan very nearly succeeded in his own attempt to fight for ISIS. Khan expressed his readiness to die as a martyr and to kill or injure people who stood in the way of his goal to establish an "Islamic State." ROA.686 (expecting that he and Garcia would be "surrounded" by "[people] trying to kill [them]"). When he was sidelined by his family's scheme to lure him home, Khan helped Garcia press on to Syria. *Khan*, 938 F.3d at 715; ROA.32, 35-36, 512, 664, 689-90, 708, 776, 836-37. And even once back in the United States, Khan connected Garcia to a facilitator (Zuhbi) who could help him join ISIS, tried to raise funds to help Zuhbi assist others in joining ISIS, and repeatedly urged Garcia on. *Khan*, 938 F.3d at 715; ROA.32, 512, 664, 776, 833-36. Khan's efforts succeeded, as Garcia did join and fight for ISIS and then died while fighting on its behalf. *Khan*, 938 F.3d at 715; ROA.664-67, 775-76, 831-33. The district court never so much as mentioned the highly aggravating factor of Garcia's death at resentencing.[6] The district court's portrayal of Khan's persistent and successful efforts to support and to recruit for ISIS as "miniscule" is contradicted by the record.

---

[6] This aggravating factor is reflected in the material support statute, which provides for enhanced penalties for offenses resulting in death. *See* 18 U.S.C. § 2339B(a)(1).

A. <u>The District Court Impermissibly Second-Guessed Whether Khan Recruited Garcia as a Fighter for ISIS</u>

In justifying the downward variance, the district court relied on a sterilized account of Khan's conduct that was not only unsupported by the record, but that also directly contradicted Khan's guilty plea, the factual stipulation included in his plea agreement, and this Court's prior opinion. At sentencing on remand, the district court explained that, in its view, "Garcia was not recruited" and that Khan's provision of material support to ISIS was merely giving Garcia money (which the district court speculated "must not have been much"). ROA.754 (comparing their efforts to join ISIS to "two guys signing up for the Marines"). But Khan pleaded guilty to providing material support to ISIS in the form of "services and personnel, including [Garcia]."[7] ROA.129, 768. And in his plea agreement, Khan admitted that he recruited Garcia, in addition to giving him money and other assistance to join ISIS: "Starting in January 2014, while in Australia, Khan began recruiting [Garcia] to join [ISIS] with him as a fighter." ROA.775.[8] Consistent with these

_____

[7] The provision of "personnel" falls squarely within the definition of "material support or resources." 18 U.S.C. § 2339A ("[T]he term 'material support or resources' means any property, tangible or intangible, or service, including . . . personnel (1 or more individuals who may be or include oneself) . . . .").

[8] In fact, the record indicates that Garcia knew little about ISIS before Khan began recruiting him. Khan sent Garcia lectures "to get [Garcia] familiar with fighting in Islam and all that" and told Garcia to "do some research on ISIS," an abbreviation Khan informed Garcia meant "(islamic state of Iraq and sham)." ROA.833.

record facts, this Court observed in its prior opinion, "In late 2013, Khan recruited Sixto Ramiro Garcia to join ISIS with him." *Khan*, 938 F.3d at 714.

Then the district court further minimized Khan's responsibility and maximized Garcia's by suggesting that Khan acted more like a travel agent than a terrorist recruiter, summarizing Khan's assistance as no more than buying a plane ticket, making some phone calls, and offering help to a friend. ROA.755-57. But the record makes clear that Garcia never would have made it to Syria or joined ISIS without Khan's help. ROA.32, 35, 512, 776, 836-37. Khan located and then established the relationship with Zuhbi, planned the logistics for their trip, made arrangements with Zuhbi, and advised Garcia how to travel to Turkey and Syria without raising the suspicion of authorities. *See, e.g.*, ROA.28, 31-32, 35, 41, 510, 775-76, 784, 832-37. When Khan told Garcia he would be returning to the United States, Garcia panicked and "pleaded with [Khan] to not leave him stranded in Turkey." ROA.512. Garcia said, "I didn't come with all that much cash. I have no connections. I've got no clue, WTF." ROA.512. Khan helped Garcia press on to Syria, giving him money, advice about how to answer questions from Turkish authorities, and Zuhbi's contact information. *Khan*, 938 F.3d at 715; ROA.32, 35-36, 512, 664, 689-90, 708, 776, 836-37. Then, as this Court observed, "Garcia was unable to contact Zuhbi on his own and reached out to Khan for help." *Khan*, 938 F.3d at 715. Khan (now back in the United States) told Zuhbi to help Garcia and

repeatedly urged Garcia on. *Id.*; ROA.32, 512, 664, 776, 833-34. Khan's efforts succeeded, as Garcia did meet Zuhbi, joined and fought for ISIS, and then died while fighting on its behalf. *See Khan*, 938 F.3d at 715; ROA.664-67, 775-76, 831-33.

Downplaying the significance of Khan's conduct resulted in the district court's improper discounting of the offense. In a recent decision, the Second Circuit vacated a defendant's sentence of 17 years' imprisonment as substantively unreasonable in part because the district court varied downward based on findings at sentencing that contradicted the defendant's plea admissions. *Mumuni*, 946 F.3d at 108-10, 113. The court of appeals held that "[w]here a district court has accepted a defendant's guilty plea and his allocution to the elements of each charged offense, [the court] cannot make findings of fact during sentencing that contradict or otherwise minimize the conduct described at the defendant's plea hearing." *Id.* In that case, the court of appeals concluded that the district court's error "resulted in its improper discounting of the seriousness of [the defendant's] offense conduct." *Id.* The same is true of the district court's error in this case.

B. <u>The District Court Relied Instead on Factors that Could Not Bear the Weight Assigned to Them</u>

Rather than placing adequate weight on the severity of Khan's offense, the district court gave controlling weight to Khan's good behavior since returning from Turkey, his lack of criminal history, and his youth. *See* ROA.752-55. Although it

was within the district court's discretion to consider those mitigating factors and to vary to some degree from the 15-year advisory Guidelines sentence, *see generally* 18 U.S.C. § 3553(a)(1) (identifying "the history and characteristics of the defendant" as one of the factors to consider in imposing a sentence), those factors cannot bear the weight assigned to them or otherwise justify the district court's 90 percent downward variance.

The district court overstated Khan's good behavior since returning from Turkey. First, the court failed to grapple with the fact that, for months after returning from Turkey, Khan continued to encourage Garcia to join ISIS and to offer him assistance. *See Khan*, 938 F.3d at 715. Khan returned to Houston on February 25, 2014. The next day, Garcia told Khan that the number Khan gave him to call Zuhbi did not work. ROA.836. Khan messaged Zuhbi, introduced him to Garcia, and asked Zuhbi to respond to Garcia so that Zuhbi could help Garcia enter Syria to join ISIS. ROA.836-37. Khan's efforts were successful, and on February 27, 2014, Garcia told Khan that he had met Zuhbi and had "been delivered." *Khan*, 938 F.3d at 715. Khan remained in contact with Garcia. When Garcia told Khan he had not yet joined ISIS, Khan encouraged him to press on (in February and then again in July 2014), offering him more money and food. ROA.837.

In addition to helping Garcia, Khan also continued, after returning to the United States, (1) to solicit online followers to donate money to Zuhbi so that Khan could "spread [Zuhbi's] noble work," ROA.690, and (2) "to distribute ISIS propaganda," *Khan*, 938 F.3d at 715. For example, in July 2014, Khan sent another friend (Humza Baig) a speech by ISIS's then-leader Abu Bakr al-Baghdadi glorifying terrorism and calling upon Muslims to take up arms against the West.[9] ROA.864. By ignoring this conduct, the district court treated Khan as if he had left Turkey because he had changed his mind about ISIS, which is not true. *See* ROA.708, 776; *see also* ROA.749, 755-56 (saying that when Khan left Turkey, he "quit before it started"). Because the district court ignored the undisputed fact that Khan kept supporting ISIS for many months after returning from Turkey, the district court afforded unjustified mitigating weight to Khan's behavior after the trip.[10]

---

[9] Al-Baghdadi, an ISIS leader known for his brutality, died during a U.S. raid against al-Baghdadi in Syria last year. *See* Jim Garamone, *Central Command Chief Gives Details on Baghdadi Raid*, U.S. Dep't of Defense (Oct. 30, 2019) https://www.defense.gov/Explore/News/Article/Article/2003960/central-command-chief-gives-details-on-baghdadi-raid/.

[10] The district court also seemed to overvalue the cooperation provided by Khan and failed to credit the government's evaluation of that cooperation. ROA.761. The government explained at sentencing that Khan "after his guilty plea did speak with law enforcement on one occasion" but apparently had little additional information to provide at that point. ROA.756.

The district court also gave undue weight to Khan's youthful naïveté. That factor does not distinguish Khan from the many young foreign fighters who have joined ISIS. *See Bell*, 81 F. Supp. 3d at 1325 ("[Y]outh itself is no disqualifier for being a terrorist."). The fact that many ISIS fighters are young does not reduce the dangerousness of their conduct. To the contrary, this case illustrates that, "in the age of the internet, a disaffected young American can so easily be indoctrinated into terrorism." *Id.* at 1320. The record of Khan's communications and conduct shows that he was not too young and inexperienced to resist ISIS brainwashing. *See* ROA.702-04. Although he claimed at the initial sentencing that he was "a victim" of ISIS propaganda, Khan was mature and sophisticated enough to understand the consequences of his decision to join ISIS, to prepare lies to conceal his activities from the authorities, to make contact with an overseas ISIS facilitator, and to recruit others to likewise support ISIS. ROA.31, 510, 775, 835. He expressed his readiness to die as a martyr and to kill or injure people who stood in the way of his goal to establish an "Islamic State." ROA.833. And he expected that he and Garcia would be "surrounded" by "[people] trying to kill [them]." *Id.*

Khan's success in recruiting Garcia and in arranging for him to be "delivered" to ISIS shows that, despite his youth, Khan's conduct had real effects and deadly consequences. The court's characterization of Khan as simply "teenage stupid," ROA.753, ignores both the tragic outcome of this particular case and the

serious threat of ISIS terrorism in general. Without Khan's recruitment and assistance, co-conspirator Garcia never would have made it to Syria. And because of Khan's conduct, he will never come back. The district court gave no weight to the fact that Khan's conduct resulted in the death of his friend—the court did not even mention that factor at resentencing—and an 18-month sentence is insufficient to reflect the seriousness of Khan's offense.

Moreover, deterring others from taking the first step along the path to radicalization is a necessary component of a terrorism sentence, particularly where, as here, the defendant not only sought to join a terrorist organization but also recruited another person to do the same. *See*, *e.g.*, *Meskini*, 319 F.3d at 92; *Ressam*, 679 F.3d at 1090-91. Although the district court had some discretion to take Khan's age into account at resentencing, such discretion was not nearly sufficient to justify minimizing or ignoring the remaining Section 3553(a) factors in using a 90 percent downward variance to arrive once again at an 18-month sentence on remand.

C. <u>Sentencing Disparity</u>

Finally, the sentence imposed by the district court would result in a wide disparity with the sentences of similarly situated defendants. In arguing for a downward variance to a 12-month sentence of imprisonment at the initial sentencing hearing, defense counsel acknowledged that it was a "big ask" and an

"unusual" request.[11]  ROA.700.  That is because recent "traveler" cases involving

defendants who traveled or attempted to travel overseas to join ISIS or other

terrorist organizations have generally resulted in far more significant sentences,

even without the aggravating factor of a partner who succeeded in joining the

organization and died fighting for it.  For example, last year a defendant in the

Northern District of Texas was sentenced to 20 years of imprisonment after

pleading guilty to conspiring to provide material support (himself) to Laskhar e-

Tayybia.  Judgment, *United States v. Sewell*, No. 4:19-cr-137 (N.D. Tex. Sept. 16,

2019).  Other recent "traveler" cases from around the country involving guilty

pleas have resulted in far longer sentences than Khan received.  *See*, *e.g.*, *United

States v. Van Haften*, 881 F.3d 543, 544 (7th Cir. 2018) (defendant sentenced to

120 months of imprisonment after pleading guilty to traveling to Turkey in an

attempt to join ISIS); Judgment, *United States v. Shahnaz*, No. 17-cr-0690

(E.D.N.Y. Mar. 13, 2020) (defendant sentenced to 13 years of imprisonment after

pleading guilty to attempting to travel to Syria to join ISIS); Judgment, *United

States v. Musleh*, No. 1:16-cr-190 (S.D. Ind. June 21, 2019) (defendant sentenced

to 100 months of imprisonment after pleading guilty to attempting to travel to

Syria to fight with ISIS).  The same is reflected by recent sentences in traveler

cases that resulted in convictions after trial.  *See*, *e.g.*,  Judgment, *United States v.*

---

[11] At the resentencing hearing, defense counsel asked the district court to reimpose the 18-month sentence of imprisonment.  ROA.746.

*Alebbini*, No. 3:17-cr-71 (S.D. Ohio June 13, 2019) (defendant sentenced to 15 years of imprisonment following conviction at a bench trial for attempting to travel to Syria to join ISIS); Judgment, *United States v. Pugh*, No. 15-cr-116-NGG (E.D.N.Y. June 14, 2017) (U.S. Air Force veteran sentenced to 420 months of imprisonment following conviction at trial for attempting to provide material support to ISIS and obstruction of justice based on traveling to Turkey in an attempt to join ISIS); Judgment, *United States v. Badawi*, No. 15-cr-60-DOC (C.D. Cal. Oct. 19, 2016) (two defendants each sentenced to 30 years of imprisonment following conviction at trial for conspiring and attempting to provide material support (themselves) to ISIS). The government is unaware of any other similarly situated defendant, whether after a guilty plea or a conviction at trial, who received such a low sentence for a violation of 18 U.S.C. § 2339B. The only comparable sentence of which the government is aware involved a defendant who cooperated extensively with the government and testified against his co-defendants. *See* Judgment, *United States v. Yusuf*, No. 15-cr-46 (D. Minn. Nov. 30, 2016) (18-year-old who attempted to join ISIS sentenced to time served (20 months of imprisonment), based in part on the fact that the defendant cooperated and testified against his codefendants).

More generally, other courts of appeals reviewing sentences in terrorism cases have found even relatively long sentences to be substantively unreasonable.

*See Mumuni*, 946 F.3d at 108-10, 113 (vacating a defendant's sentence of 17 years' imprisonment as substantively unreasonable in part because the district court varied downward based on findings at sentencing that contradicted the defendant's plea admissions); *Ressam*, 679 F.3d at 1088 (en banc) (22-year sentence of imprisonment for attempted bombing of LAX airport was substantively unreasonable where Guidelines sentence was 65 years); *Jayyousi*, 657 F.3d at 1118 (42% departure from Guidelines range of 180 months of imprisonment for material support charge was substantively unreasonable); *United States v. Abu Ali*, 528 F.3d 210, 264 (4th Cir. 2008) (30-year sentence of imprisonment was substantively unreasonable because the court did not justify its large variance from the Guidelines sentence of life in prison). The wide disparity between Khan's 18-month sentence in this case and the sentences imposed in other cases on "travelers" seeking to join ISIS, who unlike Khan did not successfully recruit others to fight and die for ISIS, underscores just how unreasonable the district court's decision was in this case. The district court's sentencing decision should once again be reversed, and the case should be remanded for imposition of a substantively reasonable sentence. *See Hoffman*, 901 F.3d at 559 (indicating that, when a sentence is set aside as substantively unreasonable, the remedy is to remand for resentencing).

## CONCLUSION

For all these reasons, this Court should vacate the sentence imposed by the
district court and remand the case for resentencing.

Respectfully submitted,

/s/ Danielle S. Tarin_____
DANIELLE S. TARIN
JOSEPH F. PALMER
Attorneys
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW Room 6500
Washington, DC 20530
(202) 532-4493
danielle.tarin@usdoj.gov

## CERTIFICATE OF SERVICE

I, Danielle S. Tarin, Attorney for the United States, hereby certify that on March 30, 2020, an electronic copy of Plaintiff-Appellant's Brief was served by notice of electronic filing via this Court's CM/ECF system upon opposing counsel, Attorney David Adler.

Upon notification that the electronically-filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. CM/ECF filing standard E(1).

/s/ Danielle S. Tarin
DANIELLE S. TARIN
Attorney for the United States

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,407 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14-point font for text and footnotes.

3.     This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.     This brief complies with the electronic submission requirement of 5th Cir. R. 25.2.1, because it is an exact copy of the paper document.

5.     This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security and is free of viruses.


/s/Danielle S. Tarin
DANIELLE S. TARIN
Attorney


Dated: March 30, 2020

# APPENDIX



The Solicitor General                    *Washington, D.C. 20530*

March 18, 2020


        Re:   <u>United States</u> v. <u>Khan</u>, No. 4:15-cr-263 (S.D. Tex.)
              (Hughes, J.)

                      APPEAL



                         /s/ Noel J. Francisco
                         NOEL J. FRANCISCO
                         SOLICITOR GENERAL


Court of appeals determination:

      [XX ] Appeal
      [   ] Intervention or Amicus Part.
      [   ] Rehearing en banc
      [   ] Other

Supreme Court determination:

      [   ] Certiorari
      [   ] Appeal
      [   ] Amicus participation
      [   ] Other

District court determination or
state court determination [   ]

cc:  Mr. Francisco
     Mr. Kneedler
     Mr. Bond


                    Requested:    March 18, 2020
                         Due:     March 30, 2020